**United States District Court**
For the Northern District of California

1

2

3

4                    IN THE UNITED STATES DISTRICT COURT

5                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7    UNITED STATES OF AMERICA,                    No. CR 05-0181 SI

           Plaintiff,                             **ORDER DENYING MOTIONS TO**
8       v.                                        **SUPPRESS AND FOR EVIDENTIARY**
                                                  **HEARING**
9    JAMES FRANCIS DONNELLY,

10          Defendant.
                                          /
11

12

13          Defendant's motions to suppress and for an evidentiary hearing pursuant to <u>Franks v. Delaware</u>, 438

14   U.S. 154 (1978) came on regularly for hearing on June 27, 2005.  Having considered the papers and pleadings

15   filed by the parties, and the arguments of counsel, the motions are DENIED.

16

17                                    **BACKGROUND**

18          On November 15, 2004, Michael Allan, an agent with Immigration and Customs Enforcement ("ICE"),

19   received a phone call from an anonymous male who reported he had personal information that James F.

20   Donnelly was engaged in child sex tourism.  Allan took notes on "post-its" during the conversation but the post-

21   its have since been destroyed and only the typed reports of the investigation and a draft affidavit are currently

22   available for review.  On November 18, 2004, three days after the call, Allan drafted an initial report including

23   the basic facts asserted by the caller.  <u>See</u> Swanson Decl., Ex. A (Summary/Description Screen).  The initial

24   report provided the following information:[1]

25          The caller indicated that he knew an individual by the name of James F. Donnelly who kept a
            scrapbook of pictures of naked boys and had thousands of images of naked children on his
26          computer. The caller also stated that Donnelly travels <u>on a regular basis</u> to Thailand in order
            to have <u>sex with young boys</u> and that he is in a <u>circle of friends which includes Walter</u>
27

28          _____
            [1] The underlined information is in dispute for the <u>Franks</u> test, discussed later.

**United States District Court**

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SCHIRRA III, who travels for the same reason.  The caller provided a San Francisco address and telephone number for Donnelly but would not provide any contact info. for himself.  Investigation confirmed Donnelly's address and phone number as well as frequent travel to Thailand.  Subsequent investigation uncovered the name of an additional suspect who has traveled with Donnelly in the past on two separate occasions. That individual is David Roger RYAN also residing in San Francisco.

On November 19, 2004, the day after the initial report was written, Allan added additional information and details to the report. Specifically, Allan added information about the caller's motivation for contacting ICE. See Swanson Decl. Exhibit C.  According to Allan's second report, the caller had seen a newspaper article about the recent arrest of Walter Schirra.  The article reported that Schirra was arrested for potential involvement with child sex tourism and mentioned the ICE.  The caller reported that he was "disgusted" by what he had seen in Donnelly's apartment but did not know who to contact prior to reading the article.  Id.  Shortly after completing the second report, Allan began drafting an affidavit.  The affidavit was last modified on December 13, 2004.  In late December, Allan was transferred to another office and Agent Fletes became the agent on Donnelly's case.

Investigation confirmed Donnelly's name, address, and age, as well as the fact the Donnelly had traveled to Thailand on at least four prior occasions and stayed for approximately one month each time.  Law enforcement conducted no independent surveillance of Donnelly within the U.S. or in Thailand.  The agents reviewed Donnelly's and Schirra's phone records and had access to Schirra's home, e-mail, and personal effects.  However, investigative inquiries did not reveal any connection between Donnelly and Schirra.  As part of the investigation, the agents placed a "look-out" in the Treasury Enforcement Communications System II ("TECS II") that provided an alert if Donnelly traveled outside the United States.  On February 14, 2005, Fletes queried TECS II and was alerted that Donnelly had left the United States with the intent to travel to Thailand for approximately one month.

At some point in February of 2005, Fletes used Allan's draft affidavit as a starting point for his own affidavit to secure a warrant.  Fletes copied portions of Allan's reports directly into the affidavit.  Fletes then called Allan to confirm that the information in his affidavit was accurate.  Allan confirmed that the information was accurate.

Fletes's affidavit contains three details regarding the phone call with the anonymous caller that are not specifically included in the first two investigative reports.  First, the Fletes affidavit states that Donnelly "travels

United States District Court

For the Northern District of California

1   to Thailand approximately two times a year for about a month at a time"; the report states that Donnelly travels

2   to Thailand "on a regular basis."  Second, the affidavit states that the caller was Donnelly's "friend"; the reports

3   states that the caller "knew" Donnelly.  Third, the affidavit states that Donnelly travels to Thailand to "engage

4   in illicit sexual activity with minor males approximately (10) to fourteen (14) years old"; the report states that

5   Donnelly travels to Thailand to "engage in illicit sexual conduct with young minor males. . ."  Def. Mot. at 15.

6   Certain charges included in the affidavit apply only to minors between the age of 12 and 16 years old.  Id. at

7   16; see 18 U.S.C. 2423 (b), (f) (addressing violations set forth in Chapter 109A).    All three of these

8   statements in Fletes's affidavit were included in Allan's original draft affidavit.  In his affidavit, Fletes changed

9   the term "a few times a year," as included in Allen's draft affidavit, to "approximately two times a year."

10          Fletes and Allan's affidavits both contained the caller's statement that Donnelly was part of a group of

11   approximately six friends who travel to Thailand to have sex with minors, as well as information on Schirra's

12   indictments for attempted travel in interstate commerce with the intent to engage in illicit sexual conduct,

13   possession of child pornography, and receipt of pornography.  See Swanson Decl., Ex. H at 4.  Information

14   that the officers' investigations had failed to establish a connection between Donnelly and Schirra was not

15   included in either the draft or final affidavits.  On March 7, 2005, Magistrate Judge Joseph C. Spero issued

16   a search warrant for Defendant's residence, limited to evidence of violation of 18 U.S.C. § 2423(b) and (e)

17   – travel with the intent to engage in sexual activity with a minor.  On March 9, 2005, Fletes filed a second

18   application and affidavit for a search warrant relying on the fruits of the initial search.  The second warrant

19   allowed the agents to search for child pornography.  On March, 9, 2005, the government filed criminal

20   complaints against Donnelly and sought a warrant for his arrest. The complaints rely on evidence seized in both

21   searches.

22          Defendant moves to suppress the evidence seized under both warrants, contending that the anonymous

23   tip lacked corroboration, making the search warrant affidavit insufficient on its face.  Defendant also argues that

24   the search warrant affidavit was inaccurate in detail and omitted critical information, entitling defendant to a

25   hearing under Franks v. Delaware.  Plaintiff opposes both motions.

26

27

28

3

**United States District Court**
For the Northern District of California

**DISCUSSION**

**1.      Probable cause/anonymous tips**

Search warrants must be supported by affidavits establishing probable cause.  Probable cause is defined as "a fair probability that contraband or evidence of a crime will be found." Illinois v. Gates, 462 U.S. 213, 238 (1983).   In reviewing the validity of the warrant, a court is limited to the information and circumstances contained within the four corners of the underlying affidavit.  United States v. Stanert, 762 F.2d 775, 778  (9th Cir. 1985).  A magistrate judge's issuance of a warrant is reviewed for "clear error," and the warrant should be upheld as long as the magistrate judge had a "substantial basis for concluding that probable cause existed based on the totality of the circumstances." United States v. Leon, 468 U.S. 897, 914 (1984); United States v. Mendonsa, 989 F.2d 366, 368 (9th Cir. 1993).

When determining if any tip is adequate to establish probable cause under the totality of the circumstances test, the tip: (1) must include a "range of details," (2) cannot simply describe easily observed facts and conditions, but must predict the suspect's future movement, and (3) must be corroborated by independent police observation.  United States v. Morales, 252 F.3d 1070, 1075 (9th Cir. 1991); Gates, 462 U.S. at 245.  An informant's veracity, reliability, and basis of knowledge are highly relevant in determining the value of an informant's report, as are the quantity and quality of the informant's information.  However, these are not "separate and independent requirements to be rigidly exacted in every case," but rather are simply "closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." Gates, 462 U.S. at 230; Alabama v. White, 496 U.S. 325, 330 (1990).

Anonymous tips pose unique Fourth Amendment concerns.  Because "an anonymous tipster cannot be held accountable if he or she provides inaccurate information and police cannot assess the tipster's reputation," "something more" than the anonymous tip alone is required to "establish reasonable suspicion that criminal activity is afoot."  Florida v. J.L., 529 U.S. 266, 270 (2000); United States v. Morales, 252 F.3d at 1074. ("As the Supreme Court explained in Alabama v. White, in order for an anonymous tip to have sufficient 'indicia of reliability' to serve as the basis for a Terry stop, the tip must include a 'range of details,' and it must predict future actions by the suspect that are subsequently corroborated by the police.")  Magistrates are granted significant latitude in making probable cause determinations and are free to assess the totality of the

4

1    circumstances from all the facts before them.

2

3    **2.      Sufficiency of search warrant**

4          Defendant argues that the warrant lacks probable cause for two main reasons.  First, defendant argues

5    that law enforcement had no basis for asserting that the information supplied by the informant was reliable

6    because the caller failed to provide a significant "range of detail" or to provide any specific information as to

7    Donnelly's future actions.  Second, defendant argues that, because the government failed to undertake any

8    independent observation of Donnelly and instead relied solely upon the confirmation of publicly available details

9    and a travel pattern that could be both innocent and legal, the warrant lacked the independent police

10   corroboration required.

11         The government contends that, under the totality of the circumstances test, the warrant provided the

12   magistrate with a substantial basis for finding probable cause.  Specifically, the caller's reliability was supported

13   by the fact that the tip was related by a witness who claimed personal knowledge of defendant's criminal

14   behavior and who described seeing a scrapbook and pictures on the defendant's computer while in the

15   defendant's home.  In addition, the government points out that law enforcement confirmed that the caller

16   provided accurate public information, such as the defendant's name and address, as well as accurate non-public

17   information about the defendant's past travel patterns.  It also argues that all public details were independently

18   confirmed by law enforcement and that by describing defendant's pattern of regular travel to Thailand, the

19   informant correctly predicted the defendant's future travel activity, establishing the caller's credibility and

20   making Donnelly's otherwise innocent behavior criminally suspicious.

21         Applying Gates, J.L., White, and Morales, the Court finds that although this is a close case,  there is

22   probable cause under the totality of these circumstances.  Under Gates, the corroboration of innocent details

23   alone can establish probable cause if the innocent activity is suspicious enough in light of the tip.  The officers

24   here independently confirmed not only that the caller was correct about Donnelly's name and address, but that

25   Donnelly had traveled to Thailand in the past for approximately month-long periods of time.  Independent

26   investigation also revealed that Donnelly was on a trip to Thailand for an approximately one month stay in

27   February of 2005, just prior to the request for a warrant.  In addition, while regular travel to Thailand may be

28   innocent, it is also consistent with child sex tourism: Special Agent Fletes asserted in his affidavit that Thailand

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1   is recognized as a popular destination for individuals interested in child sex tourism and is known for its failure

2   to arrest or punish individuals engaged in sex tourism.[2]

3         The caller's first-hand knowledge and reasonable and verifiable motivation for reporting Donnelly

4   strengthen the informer's credibility.  The caller told agent Allan that he had personally seen a scrapbook and

5   computer images of thousands of naked boys and that he knew that Donnelly traveled to Thailand to participate

6   in sex with young boys.  The Court may consider a law enforcement agent's evaluation of details provided by

7   an anonymous caller, and Special Agent Fletes asserts that maintenance of scrapbooks, photo albums and

8   computer images is consistent with law enforcement profiles of pedophiles and child sex tourists.  Likewise,

9   the fact that the caller accurately cited a newspaper article that mentioned ICE in connection with the arrest of

10  Schirra helped establish context as to why the caller reported Donnelly.

11        Accordingly, the motion to suppress based on lack of probable cause in the affidavit supporting the

12  search warrant is DENIED.

13

14  **3.      Good faith exception**

15        Under the good faith exception, even if a warrant is not based on probable cause, the evidence need

16  not be suppressed if an officer relies on the warrant in "good faith."  See United States v. Leon, 468 U.S. 897,

17  922-23, n. 24 (1984).  Evidence will not be suppressed when the magistrate, not the officer, errs.  Mendosa,

18  989 F.2d at 369.  However, information provided to the magistrate must be truthful "in the sense that the

19  information put forth is believed or appropriately accepted by the affiant as true."  Franks, 438 U.S. at 165.

20  Evidence should be suppressed only if: (1) the magistrate has abandoned his detached and neutral role, (2) the

21  officers were dishonest or reckless in preparing their affidavit, or (3) the officers could not have "harbored an

22  objectively reasonable belief that probable cause existed."  Leon, 468 U.S. at 926.  It is the government's

23  burden to demonstrate that the officers' reliance on an invalid warrant was reasonable.  See Center Art

24  Galleries, 875 F.2d at 752.

25        Defendant argues that agent Fletes was reckless because the warrant included information that he knew

26

27  _____

28        [2]As part of the totality of the circumstances test, the Ninth Circuit has recognized that "opinion and
conclusion of an experienced agent regarding a set of facts are properly a factor in the probable cause equation
under Gates."  United States v. Michaelian, 803 F.2d 1042 (9th Cir. 1986).

**United States District Court**

For the Northern District of California

1   or should have known was false and misleading, and that under such circumstances no reasonable agent would

2   have attached significance to the anonymous caller's statements.  Specifically, defendant points to three alleged

3   false or misleading statements[3] and one omission (the failure to inform the magistrate that investigation had not

4   established a link between Donnelly and Schirra).  The government argues that there is no evidence that the

5   agents were reckless or dishonest and that defendant should not benefit if the magistrate judge incorrectly

6   determined that the agents had sufficiently corroborated the anonymous tip.

7        Because this Court finds that the warrant was supported by probable cause, the good faith exception

8   need not be called into play to deny the motion to suppress.  Alternatively, this Court would find that in the

9   event the warrant was insufficiently supported, the officers executing it acted in good faith.  However, since the

10  good faith exception is not an appropriate remedy if the magistrate judge, in issuing the warrant, was misled by

11  information in the affidavit that an officer knew or should have known would materially alter the determination

12  of probable cause, it is necessary to evaluate the issue of the officers' allegedly false or reckless statements.

13  This  is addressed below.

14

15  **4.        Request for Franks hearing**

16       To be entitled to a Franks hearing, a defendant must make a substantial preliminary showing that a false

17  statement or omission was knowingly or recklessly made and that the statement or omission was material and

18  necessary to the finding of probable cause.  Franks v. Delaware, 438 U.S. 154, 155-6 (1978); see also;

19  United States v. Kyllo, 37 F.3d 526, 529-30 (9th Cir. 1994) (holding that material omissions qualify under the

20  Franks test), rev'd on other grounds, 533 U.S. 27 (2001).  Specifically, a party is entitled to an evidentiary

21  hearing under Franks if the party makes a substantial preliminary showing that: (1) a false statement was

22  included in the affidavit for the federal warrant; (2) the false statement was made knowingly and intentionally,

23  or with reckless disregard for the truth; and ( 3) the false statement was necessary to the federal magistrate's

24  finding of probable cause.  Franks, 438 U.S. at 155-6.  A non-conclusory "substantial preliminary showing"

25  of these facts entitles the defendant to an evidentiary hearing.  Franks, 438 U.S. at 171-72, 98 S.C. at 2684-

26  85. If, "when material that is the subject of the alleged falsity or reckless disregard is set to one side, there

27

28

_____

[3] Discussed in the Franks section, below.

7

United States District Court

For the Northern District of California

1  remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required."

2  Franks, 438 U.S. at 172.  The test applies to intentional omissions as well as false statements.  United States

3  v. Stanert, 762 F.2d 775, 781 (9th Cir. 1985).

4          Here, defendant seeks a Franks hearing because of three "misstatements," based on differences in

5  language between the initial reports and the final affidavit, and one omission.  The first "misstatement" is that

6  the initial report states that Donnelly travels to Thailand "on  a regular basis," while the affidavit  states that

7  Donnelly "travels to Thailand approximately two times a year for about a month at a time."  The second is that

8  the affidavit states that Donnelly travels to Thailand to "engage in illicit sexual activity with minor males

9  approximately (10) to fourteen (14) years old," while the report states only that Donnelly travels to Thailand

10  to "engage in illicit sexual conduct with young minor males."  The third "misstatement" is that the affidavit states

11  that the caller was Donnelly's "friend," while the reports states that the caller "knew" Donnelly.  The omission

12  is that in the affidavit, the officers included information about Schirra's arrest and conviction and reported that

13  the caller stated that Donnelly was part of a group of friends including Schirra who traveled to Thailand, but

14  the affidavit did not state that the officers' investigative work had failed to establish a link between Schirra and

15  Donnelly through phone records or travel plans.

16          The Court finds that none of this amounts to the "substantial showing" required to warrant a hearing

17  under Franks.  The "misstatements" are not inconsistencies, but rather differences in specificity between the

18  information in the initial report and the affidavit.  It is worth noting that the draft affidavit, prepared by Special

19  Agent Allan within a month of the anonymous telephone call, contained all of the more specific information now

20  characterized as "misstatements."  Defendant's argument at the hearing on these motions was that Special

21  Agent Fletes deliberately exaggerated the amount of detail available when putting together his final affidavit, but

22  this argument is undermined by the fact that these details had already been included in Special Agent Allan's

23  draft affidavit which had been in the file for months. The differences, which are of degree only, are not material

24  to the issuance of the warrant.

25          Nor does the alleged omission change the equation.  Defendant contends that, although the affidavit

26  does report the caller's statement that defendant claimed to be part of a sex-tourism group which included

27  Walter Schirra, it omitted to state that investigation of Schirra had produced no written records showing that

28  defendant and Walter Schirra traveled to Thailand together or telephoned each other.  In the first place, the

1  caller had not said that defendant and Schirra traveled together.  More broadly, the fact that the connection to

2  Schirra was not established would not have materially altered the probable cause analysis engaged in by the

3  magistrate judge.   Leaving the Schirra connection aside, there was sufficient information to provide a

4  "substantial basis for concluding that probable cause existed based on the totality of the circumstances." United

5  States v. Leon, 468 U.S. at 914.

6       The Court finds that defendant has not made a sufficiently substantial preliminary showing to warrant

7  a Franks hearing, and the motion for such a hearing is DENIED.

8

9  **CONCLUSION**

10       Defendant's motion to suppress the evidence seized during the execution of the March 7, 2005 search

11  warrant, and the fruits thereof, or alternatively to conduct a Franks hearing, is DENIED.  **This matter is set**

12  **for a further status/trial setting conference on Friday, July 8, 2005 at 11:00 a.m.**

13

14       **IT IS SO ORDERED.**

15

16  Dated: June 30, 2005

17

18  _____

19  SUSAN ILLSTON
   United States District Judge

20

21

22

23

24

25

26

27

28

9

United States District Court

For the Northern District of California